UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GERALDINE M. McHUGH,

        Plaintiff,

v.

CITY OF TACOMA, a municipal corporation; CANDACE CALLAWAY; MIKE SORUM; DAVID DYE; ELIZABETH BROOKS; JOSEPH BUNDY; and DOES 1-10.

        Defendants.

CASE NO. C10-5450BHS

ORDER GRANTING IN PART AND DENYING IN PART MOVING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter comes before the Court on Moving Defendants'[1] motion for partial summary judgment (Dkt. 12). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On April 7, 2011, Moving Defendants moved the Court to grant partial summary judgment. Dkt. 12. On May 3, 2011, Plaintiff Geraldine McHugh ("McHugh") responded

---

[1]Moving Defendants include all named Defendants, not to include unnamed DOES.

ORDER - 1

in opposition to the motion. Dkt. 20. On May 6, 2011, Moving Defendants replied. Dkt. 22.

## II. FACTUAL BACKGROUND

This is an employment discrimination action. *See* Amended Complaint (Dkt. 2). At all relevant times, the City of Tacoma (the "City") employed McHugh as a field investigator for the City's Department of Public Utilities. In 2008, while McHugh was employed by the City, the City enacted a workplace violence prevention policy. Declaration of Paul Goulding (Goulding Decl., Dkt. 15), Ex. B.[2] Prior to the events leading up to this action, McHugh had no prior disciplinary history under this policy or otherwise. *Id*. ¶ 22 (quoting arbitrator's decision).[3]

Before becoming a field investigator, McHugh was a meter reader and was "best friends" with a fellow meter reader, Candace Callaway ("Callaway"). Amended Complaint ¶ 51. During the course of their friendship, Callaway learned that McHugh suffered from bipolar disorder. *See, e.g., id*. ¶ 19 (McHugh admits she suffers from bipolar disorder). Callaway testified in the parties' arbitration that McHugh had shown her bruises from self-inflicted injuries and that she had witnessed McHugh bite herself in a fit of rage. Goulding Decl., Ex. A at 59, 68, 293 (McHugh admitting that she had, on occasion, intentionally hurt herself in minor ways).

---

[2]The City enacted the program to take a stand against violence or threats of violence by or against any employee of the City. The policy empowered the City to take appropriate disciplinary action against policy violators, which included termination. Goulding Decl., Ex. B at 1.

[3]The parties engaged in arbitration, which resulted in McHugh being reinstated as a field investigator. A transcript of some of the proceedings is on file with this Court. *See* Dkt. 15. The arbitration transcript provides many of the facts, which are undisputed unless otherwise described herein. *See, e.g., Gulf USA Corp. v. Fed. Ins. Co.*, 259 F.3d 1049 (9th Cir. 2001) (deposition testimony can be used by or against a party in connection with a motion for summary judgment, "regardless of whether the testimony was taken in a separate proceeding").

ORDER - 2

Callaway and McHugh's close, personal friendship ended after the City promoted McHugh to field investigator and promoted Callaway to supervisor of field investigators, including McHugh. Amended Complaint ¶ 51. At one point, acting in her capacity as supervisor, Callaway became concerned for McHugh and, after several unanswered phone calls, visited her house to find out if she was okay. Callaway's visit was rebuffed by a letter from McHugh's counsel which informed the City that, in the future if concerns arise for McHugh's safety, "they should call emergency services and not come to her home." Goulding Decl., Ex. C.

In early 2008, McHugh sought an accommodation due to her admitted Attention Deficit Disorder ("ADD"), asserting that her disorder makes it difficult to be productive in the morning. Goulding Decl., Ex. D (email from plaintiff, 2008). The City and McHugh eventually reached agreement regarding an accommodation. Goulding Decl., Ex. G (letter to McHugh's counsel regarding accomodation).

On February 18, 2009, Callaway directed McHugh to carry out certain job functions in a particular geographical area ("C area") before proceeding to a different area ("F area"). Goulding Decl., Ex. A at 37. McHugh directly challenged Callaway's directive, asserting that it was more efficient to first go to "F area" and then to "C area." *Id*. at 265. Callaway, however, insisted that McHugh follow her instructions. *Id*. at 265. However, McHugh went to "F area" first and, instead of working, went to see her psychotherapist who happened to work in "F area." *Id*. at 266, 270. McHugh testified during the arbitration that she knew that failing to obtain prior approval before taking time off work violated her supervisor's orders, and she does not dispute that failing to follow a supervisor's directives could be subject to disciplinary action. *See, e.g., id*. at 271.

The following day, Callaway approached McHugh and asked to speak with her regarding the prior day's work and McHugh's failure to follow Callaway's directives. *Id*.

at 16, 272. At the end of the conversation, Callaway informed McHugh that she would be documenting McHugh's insubordination in her file. *Id.* at 19, 273. McHugh informed Callaway that she too was documenting these matters and walked out of Callaway's office. *Id.* at 273. Upon leaving Callaway's office, McHugh went to Callaway's supervisor's, Tony Kendall ("Kendall"), office to ask if a third party could be present at future conversations with Callaway; Kendall was not in his office. *Id.* at 279.

One of Callaway's co-workers, David Dye ("Dye") testified in the arbitration that, after McHugh and Callaway spoke, McHugh came to him to discuss the situation. *E.g.*, *id.* at 73. Following their conversation, Dye went to Callaway to inform her of what they had discussed. *Id.* at 25, 76, 77. Dye told Callaway that McHugh was planning to kill herself and that she had just bought a book entitled "101 Ways to Kill Your Boss." *Id.* 25, 73.[4] Callaway testified that Dye was "visibly shaken" as he relayed the information and that he "had a difficult time . . . getting some of it out." *Id.* at 26. Callaway asked Dye to prepare a written statement. *Id.* at 77-78; *see also* Goulding Decl., Ex. H (copy of written statement).

After talking with Dye, Callaway returned to her office and relayed the information to Michael Sorum ("Sorum"), a fellow supervisor. Goulding Decl., Ex. A at 384. Sorum told Callaway to inform human resources and obtain instructions on how to handle the situation. *Id.* at 30. Debbie Dahlstrom ("Dahlstrom"), the City's risk manager, told Ms. Callaway to call the police. *Id.* at 128-130. Dahlstrom testified in the arbitration that this was the City's standard procedure when someone makes a threat to kill themselves or others. *Id.* at 129-130, 164. Because of Callaway's mental state of mind following her conversation with Dye, Sorum called the Tacoma Police Department

---

[4] It is undisputed that the arbitrator found this book to be of a humourous nature, based on a search of Amazon.com's website.

ORDER - 4

("TPD"). *Id.* at 116. Officer Joseph Bundy ("Bundy") responded to the call and went to the Department of Utilities to begin his investigation of the matter. *Id.*

Once at the utilities office, Bundy received a copy of Dye's prepared statement and was informed about the situation. Additionally, Bundy was informed of the prior friendship that existed between Callaway and McHugh and of Callaway's personal knowledge of McHugh's admitted issues with mental stability (ADD and bipolar disorder). Declaration of Officer Joseph Bundy (Dkt. 14, Bundy Decl.) ¶¶ 4-5. Based on his experience, Bundy believed the threats to be credible and that he would either have to arrest McHugh for harassment or, at a minimum, take her to be evaluated by a mental health professional to determine whether she posed a real risk to herself or Callaway. *Id.* ¶¶ 5-6.

Bundy learned that McHugh was out on assignment in Fife, Washington. Bundy contacted the Fife Police Department and asked them to locate and detain McHugh until he arrived to take her into custody. Goulding Decl., Ex. A at 299; Bundy Decl. ¶ 7. After taking McHugh into custody, he took her to the Triage Center for Puget Sound Hospital, there she was evaluated and released six hours later. Goulding Decl., Ex. A at 301; Amended Complaint ¶ 41.

Following these events, Steve Hatcher, a customer service manager for the utilities department, placed McHugh on administrative leave subject to conditions. Goulding Decl., Ex. A at 170. A letter regarding McHugh's administrative leave was both mailed to her and read in its entirety into her cell phone's voicemail. Goulding Decl., Ex. I; Goulding Decl., Ex. A at 172-173. Two conditions attached to the administrative leave: (1) McHugh was to be available by phone during business hours and (2) she could not speak with any co-workers regarding the matters at hand. *Id.* at 169; Goulding Decl., Ex. I (copy of letter). On February 24, 2009, while on administrative leave, McHugh contacted Dye and discussed the matters at hand. *Id.* at 79-81, 308-311.

Plaintiff later became informed that she would have to take a fitness for duty exam with a licensed psychologist before she could return to work. *Id.* at 132. This type of exam occurs over two days and is used to assess a person's medical and physical ability to return to work; the City pays for the exam. *Id.* 132. Although she initially refused, McHugh eventually completed one out of the required two days of evaluation. *See, e.g., id.* at 313-315.

Based on what it viewed as McHugh's repeated refusals to submit to the fitness for duty exam, the City advised McHugh by letter dated March 31, 2009, that it intended to terminate her employment. Goulding Decl., Ex. S. (copy of the City's "notice of intent to terminate employment"). After a hearing on the matter, the director of utilities sent McHugh a formal termination letter. Goulding Decl., Ex. U (citing only her refusal to submit to the fitness for duty exam as the basis for termination). *Id.* McHugh appealed the matter to an arbitrator, which is consistent with the City's collective bargaining agreement with its unionized employees of which McHugh is one. *See* Goulding Decl., Ex. V (arbitrator's decision and award, dated March 29, 2010).

The arbitrator considered only McHugh's failure to complete the fitness for duty exam in determining whether termination was proper; this was the only stated reason for termination in the notice of termination. The arbitrator found Dye's recollection of the events unconvincing, specifically the content of any threats allegedly by McHugh. However, the arbitrator did not consider whether the City was justified in taking the actions it did in response to learning about the alleged threats. The arbitrator ordered McHugh reinstated in her position as field investigator subject to taking the fitness for duty exam.

Based on the foregoing, McHugh seeks relief under the following causes of action against Moving Defendants: (1) gender discrimination, 42 U.S.C. § 2000, *et seq.*, and RCW 49.60; (2) retaliatory discharge, 42 U.S.C. § 2000, *et seq.*, and RCW 49.60; (3)

disability discrimination, 42 U.S.C. § 12112, *et seq.*; (4) violation of civil rights; 42 U.S.C. § 1983; (5) negligent infliction of emotional distress; (6) negligent retention and supervision; and (7) tort of outrage.

Moving Defendants' motion for partial summary judgment is expressly limited to (1) McHugh's § 1983 claims against Sorum, Callaway, and the City; and (2) McHugh's federal and state law discrimination and retaliation claims based on a phone call made to the police, the decision to place McHugh on administrative leave, and the decision to terminate her employment. Dkt. 22 at 1-2.

Additionally, McHugh contends that Moving Defendants have not been forthright with discovery and that she is unable to adequately "decipher what [claims] the motion challenges." Moving Defendants oppose McHugh's contentions on this point.

### III. DISCUSSION

**A.  Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson,* 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.  Moving Defendants' Motion for Summary Judgment**

   **1.  42 U.S.C. § 1983**

   **a.  McHugh's § 1983 Claims Against Callaway and Sorum**

McHugh alleges violations of § 1983 against Callaway and Sorum. Section 1983 provides a private right of action for any person deprived of his constitutional rights, but only where the deprivation is caused by state actors, that is, "persons acting under color of state law." *Ibrahim v. DHS*, 538 F.3d 1250, 1257 (9th Cir. 2008). Therefore, to prevail in her § 1983 claim, McHugh must establish that Sorum and Callaway (individual Defendants for whom McHugh alleges § 1983 violations) were state actors.

A plaintiff trying to show that a private party acted under color of state law must show that the defendants "conspired or acted jointly with state actors." *Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772, 783 (9th Cir. 2001) *(citing United Steelworkers v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540 (9th Cir. 1989)). To be successful in such a

claim, a plaintiff must provide competent evidence of "an agreement or meeting of the minds to violate constitutional rights." *Id.* (quoting *Phelps Dodge*, 865 F.2d at 1540-41). But the mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under § 1983. *See Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983); *Butler v. Goldblatt Bros., Inc.*, 589 F.2d 323, 327 (7th Cir. 1978). As the Ninth Circuit noted in *Radcliffe*, "a relationship of cause and effect between the complaint and the prosecution is not sufficient, or every citizen who complained to a prosecutor would find himself in a conspiracy." *Radcliffe*, 254 F.3d at 783.

McHugh predicates her § 1983 claim against Sorum and Callaway on the fact that Dye fabricated the story about McHugh's threats. However, this point is irrelevant. The following facts are undisputed: (1) Dye reported the alleged threats to Callaway, fabricated or not; (2) Callaway believed Dye's story about these threats; (3) Dahlstrom decided that Callaway should call the police based on Callaway's conversation with her about McHugh's alleged threats, which is consistent with the workplace violence prevention policy in place at the time; (4) McHugh's own attorney requested by letter that McHugh's supervisors call the emergency services if they became worried about her; (5) Bundy took statements from Callaway and Dye, which he found credible and determined that, in his experience, he should locate and take McHugh to a triage center for evaluation.

Based on the undisputed facts, as just described, it makes no difference whether Dye told the truth or not.[5] McHugh has failed to provide sufficient, competent evidence to

---

[5] Moving Defendants move the Court to strike declarations filed in support of McHugh's opposition to their motion, which contain hearsay statements regarding Dye's credibility or lack thereof. While such statements may be inadmissible, because the truth or falsity of Dye's statements are irrelevant, the Court has not relied on them in reaching its decision herein. Therefore, the motion to strike is denied without prejudice.

establish that Sorum, Callaway, or Bundy unjustifiably perceived Dye's story to be true (i.e., that McHugh was unstable and threatened to kill herself and/or others).[6] *See Villiarimo v. Aloha Isl. Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) (the analysis of such issues does not turn on objective truth; "courts only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless"). Additionally, McHugh has supplied no evidence of a conspiracy to violate her constitutional rights as between Callaway, Sorum, and/or Bundy.

Therefore, because McHugh has not provided competent evidence to establish that Callaway and Sorum were state actors in this case, her § 1983 claims against them fail.

### b. McHugh's § 1983 Claim Against the City

McHugh alleges § 1983 claims against the City based on the fact that Bundy took McHugh into custody and brought her to a triage center for a mental health evaluation. A city cannot face § 1983 liability based merely on the acts of its employees. *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 690-91 (1978). Instead, municipal liability under § 1983 is actionable only where "an action pursuant to an official policy of some nature causes the constitutional tort."

To begin with, McHugh has not alleged that her detention and subsequent mental evaluation occurred due to an unconstitutional policy, ordinance, regulation, decision, or custom of the City. Even if there is some allegation that could be construed otherwise, McHugh has not supplied competent evidence on which the Court could find a constitutionally violative policy, ordinance, regulation, decision, or custom of the City on which to base *Monell* liability in this case. Therefore, McHugh's *Monell* claim should fail on this basis alone.

---

[6] Bundy's police report establishes that he believed that McHugh had previously told Callaway that "she felt like killing herself."

ORDER - 10

To the extent McHugh alleges that Bundy engaged in unreasonable conduct when he detained her and took her for evaluation, such a claim also fails. Under Washington law, a peace officer like Bundy is authorized to so detain a person in the situation in which he found McHugh. *See* RCW 71.05.153 (authorizing an officer to take a person he reasonably believes to be suffering from a mental disorder to a triage center for evaluation when a threat of harm has been made). Moreover, as discussed above, the City cannot be held vicariously liable for such action even if it were deemed unreasonable.

Additionally, McHugh alleges a failure-to-train claim regarding Bundy's actions, but her claim is not supported by competent evidence that would establish, as required, that the City had a "deliberate indifference to the rights of persons with whom the [untrained state actors] came into contact." *City of Canton v. Harris*, 489 U.S. 378 (1989).

One prerequisite for such a claim is that a plaintiff must establish that a municipality actually failed to provide adequate training. *See Connick v. Thompson*, 131 S. Ct. 1350 (2011). But in this case, Bundy had been trained specifically on how to handle persons who may be mentally ill and a threat to herself or others. Bundy Decl. ¶ 3. Another prerequisite is that a plaintiff must establish "a pattern of similar constitutional violations by untrained employees to demonstrate deliberate indifference." McHugh has established no such pattern or practice in this case.

To succeed in a failure-to-train claim, a plaintiff must also establish that the alleged training deficiency was the "moving force" that "actually caused" the injury. *Connick*, 131 S. Ct. at 1358 n. 5. McHugh has provided no competent evidence to establish this prerequisite. Finally, McHugh has not supplied adequate authority for the proposition that a failure-to-train claim can be established based on a single officer's single act, especially one who acted reasonably pursuant to statutory authority. *See* RCW 71.05.153(2) (authorizing a police officer to take a person into custody when they are reasonably believed to be mentally unstable and a threat to herself or others).

ORDER - 11

Based on the foregoing, McHugh's § 1983 claims against the City fail.

### 2. Discrimination & Retaliation Claims

When, as here, a plaintiff claims violations of her civil rights under Title VII and Washington's discrimination law but points to no evidence of direct discriminatory intent, a plaintiff may still be able to establish a prima facie case of intentional discrimination by meeting the four prongs of the *McDonnell Douglas* test.

To establish the prima facie case, a plaintiff like McHugh must show that (1) she is a member of a protected class under Title VII; (2) she performed her job adequately; (3) she experienced an adverse employment action, like termination; and (4) she was treated differently than similarly situated employees outside the protected class were treated differently. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1031 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Once the plaintiff establishes a prima facie case, a rebuttable presumption shifts the burden of production to the employer to articulate some legitimate, non-discriminatory reason for its decision. *Id.* If such reason is articulated, the burden then shifts back to the plaintiff to prove that the employer's stated reason is merely a pretext. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-08 (1993). To show pretext, the plaintiff must do more than restate the prima facie case – she "must produce specific facts either directly evidencing a discriminatory motive or showing that the employer's explanation is not credible." *Lindahl v. Air France*, 930 F.2d 1434, 1438 (9th Cir. 1991).

Moving Defendants argue that McHugh has failed to provide competent evidence to establish a prima facie case for discrimination and retaliation. In her response in opposition to the motion for partial summary judgment, McHugh does not adequately dispute that the City had legitimate, non-discriminatory reasons for calling the police, placing her on administrative leave, and terminating her employment. In short, even if McHugh were successful in establishing a prime facie case, no pretext has been

established, which is required to succeed in her claim under the burden shifting required under the *McDonnell Douglas* test.[7] Therefore, the claim fails.[8]

### 3. McHugh's Common Law Claims

Moving Defendants argue that McHugh's claims for negligent infliction of emotional distress, negligent supervision and retention, and for outrage depend on the same facts as those used to support McHugh's allegations of statutory discrimination and § 1983 violations. Based on this reasoning, they further argue that the claims are, therefore, duplicative and accurately point out that Washington law does not permit duplicative recovery. *See, e.g., Francom v. Costco Wholesale Corp.*, 98 Wn. App. 845, 865 (2000).

However, Moving Defendants' reliance on *Francom* is misplaced. *Francom* merely holds that double recovery for duplicative claims is improper. But no such double recovery is possible here given that McHugh's common law claims stand alone following the ruling herein. Therefore, this argument is meritless.

Alternatively, Moving Defendants argue that McHugh's state law claims should be dismissed because the City could not have breached a duty owed if their actions were reasonable. However, this argument is also not well taken.

As an initial matter, Moving Defendants' argument on this issue is not well briefed. Second, it appears that Moving Defendants are simply making an appeal to logic

---

[7]McHugh supplies some evidence, although inadmissible due to relevance issues or the fact that the declarant makes statements based on speculation rather than personal knowledge. *See* Declaration of Carolyn Solitaire ("Solitaire"), filed in support of McHugh's opposition to the motion for partial summary judgment. Moving Defendants move to strike the declaration of Solitaire). This motion is granted.

[8]Additionally, McHugh argues that summary judgment is premature on her gender discrimination claim regarding "fire retardant" clothing that female field investigators were allegedly required to wear by the City while working in the field. However, this issue is not raised by Moving Defendants' motion for partial summary judgment and is, therefore, beyond the scope of their motion; the Court does not address this issue further herein.

that goes something like this: If the tort alleged requires the breach of a duty, then they could not be liable if the Court dismisses McHugh's statutory claims, which implies that Moving Defendants' actions were reasonable. However, as an example, the tort of outrage (McHugh's ninth cause of action, *see* Amended Complaint) does require a showing of a breach of duty. To succeed in an outrage claim a plaintiff must establish (1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress. *See Johnson v. Hawe*, 388 F.3d 676, 687 (9th Cir. 2004). In short, while Moving Defendants may ultimately prevail on summary judgment for these claims, they have not properly briefed the Court on these issues.

Therefore, partial summary judgment on this issue is denied.

**C.     McHugh's Motion for Continuance of Discovery**

In her opposition to the motion for summary judgment, McHugh contends that Moving Defendants have not been forthright in discovery and have not clearly identified the issues for which they seek partial summary judgment. Dkt. 20 at 2. The Court finds the scope of Moving Defendants' partial summary judgment motion expressly confined to the issues discussed herein.

Notably, McHugh has not filed a single discovery motion in this case, which is the proper vehicle for bringing a discovery dispute to the Court's attention. Therefore, the Court declines to address such argument further herein.

To the extent McHugh's response in opposition could be considered to contain a motion for continuance to obtain further discovery before properly opposing the motion for summary judgment, this argument is not well taken. A plaintiff seeking such a continuance is required to "identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *Tatum v. City & County of San Francisco*, 441 F.3d 1090 (9th Cir. 2006). McHugh has made no

such showing. In fact, instead of attempting to make such a showing, McHugh wrote an extensive brief with attachments to support her opposition to the motion for partial summary judgment.

Therefore, because no adequate showing for a continuance has been made, no continuance will be granted.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Moving Defendants' motion for partial summary judgment is granted in part and denied in part for the reasons discussed herein.

DATED this 16th day of June, 2011.

BENJAMIN H. SETTLE
United States District Judge